*In re* MARRIAGE OF LINDA K. BURKHART, Petitioner-Appellee, and TONY L. BURKHART, Respondent-Appellant.

Second District    No. 2—94—0271

Opinion filed November 22, 1994.

Julia K. Carpenter, of Hall, Roach, Johnston, Fisher & Bollman, and Thomas M. Gurewitz, both of Waukegan, for appellant.

Frank J. Jesse, of Waukegan, for appellee.

JUSTICE PECCARELLI delivered the opinion of the court:

The circuit court of Lake County entered a judgment dissolving the marriage of petitioner, Linda Burkhart (Linda), and respondent, Tony L. Burkhart (Tony), on April 16, 1990. The judgment incorporated, in part, the parties' oral property settlement agreement. During the prove up, Linda testified to the oral property settlement agreement which provided that Tony's entire military pension would be his property. Tony was not present. The court did not approve the distribution of Tony's military retirement pay and attempted to reserve the issue. Three years later, on November 12, 1993, upon notice, and following argument and hearing, the court divided the military pension between the parties. On appeal, Tony argues that the trial court abused its discretion in dividing the military pension 40% to Linda and 60% to Tony. We reverse and remand.

The parties married on August 26, 1972. Two children were born to the marriage: Chad A. Burkhart, born February 20, 1973, and Kendra L. Burkhart, born July 26, 1974. The children, age 17 and 15 at the time of the dissolution of their parents' marriage, are now emancipated.

On April 16, 1990, Linda filed a verified petition for dissolution of her 17-year marriage to Tony. Linda also filed, on the same date: (1)

a *pro se* appearance by Tony; (2) a stipulation for (a) entry of an order of default against Tony and (b) "that this matter may be heard and the facts proved up as a default case on April 16, 1990"; and (3) a judgment for dissolution incorporating the agreement of the parties, signed by both parties. Hearing proceeded *instanter*. Tony was neither present nor represented by counsel.

Linda testified that Tony was 40 years old, that he was retired from the Navy, currently receiving retirement pay, and that he had quit his trucking job. Her verified petition states that she was 35 years old and worked as a cashier for the Mutual True Value Hardware of Highland Park, Illinois. Linda testified as to the grounds of mental cruelty, custody and visitation, and other terms of an oral agreement, as set forth in a written judgment.

The court granted a dissolution of marriage, awarded custody, child support, and medical insurance for the children, and barred maintenance to either party. The court entered the written judgment tendered by Linda with one exception—the trial court did not approve the parties' agreement as to Tony's pension. The judgment entered on April 16, 1990, shows the award of pension to Tony scratched out, with the following handwritten addition: "The issue of the division of the Respondent's military retirement income will be reserved by this Court for future hearing upon notice." The court ordered Linda to send a copy of the revised judgment to Tony.

The April 16, 1990, testimony pertinent to this appeal is as follows:

"THE COURT: Mr. Burkhart was in the navy during most of your marriage; is that right?

THE PETITIONER: Yes.

THE COURT: And is there some reason why you're giving up your interest in his retirement pay?

THE PETITIONER: Well, he said he needed money to live off of, and he also knew that the 25 percent [presumably for child support] was all he had to pay.

THE COURT: But he was making pretty good money as a trucker?

THE PETITIONER: Yes.

MR. JESSE (Linda's attorney): He quit that job, Judge, because she filed for divorce.

THE COURT: Are you afraid of him?

THE PETITIONER: Yes.

THE COURT: Is that why you agreed to this?

THE PETITIONER: Yes.

THE COURT: I'm not sure that this is an agreement that I can accept. You have a substantial interest in his retirement, and he

has an obligation to have the necessary income to be able to contribute to the support of your children. And when you give up your right to his retirement, you're giving up something that you—the law takes that you earned during your marriage along with him because you were equal partners in your marriage and in the acquisition of assets during that period.

PETITIONER: I know."

The record on appeal shows that Tony made child support payments to Linda from April 16, 1990, until October 28, 1992. Garnishment of his pension stopped after the youngest child reached age 18 years.

On May 24, 1993, Linda filed a notice of motion requesting that the trial court divide Tony's "military retirement pay, as a division of the property of the parties, 42.5 to Linda and 57.5% to Respondent, under the Uniformed Services Former Spouses Protection Act, Title 10, United States Code, Section 1408." Linda's share of the pension would thus be approximately half of the percentage obtained from dividing the number of months of the marriage (17 years, 7 months) by Tony's 20 years of military service. The court heard testimony and arguments on the division of the retirement pay on September 3, 1993.

Tony argued that the division should be made under section 503 of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/503 (1992 West)). Linda protested, arguing that the financial circumstances of the parties have no bearing on the court's determination of the division of the pension. The court found that it should and did consider the relevant factors "set forth in 750 ILCS 5/503 (d)(1) through (d)(12)" and ordered that the military pension be divided 60% to Tony and 40% to Linda.

■ The question on appeal is whether the court abused its discretion in dividing the military pension 60% to Tony and 40% to Linda. The Marriage Act gives trial courts the authority to enter a judgment of dissolution with an issue reserved, "but only upon (1) agreement of the parties, or (2) motion of either party and a finding by the court that appropriate circumstances exist." (*In re Marriage of Britton* (1986), 141 Ill. App. 3d 588, 591, citing Ill. Rev. Stat., 1985 Supp., ch. 40, par. 401(b) (now 750 ILCS 5/401(b) (West 1992)).) In *Britton*, neither provision was met in the trial court. The court in *Britton* therefore ruled that the issue of pension benefits was improperly reserved. It follows that the courts must comply with section 401(b) of the Marriage Act to preserve jurisdiction for the distribution of benefits. (*Britton*, 141 Ill. App. 3d at 591.) The record in the instant case clearly shows that the parties neither agreed to the

reservation of distribution of the pension nor moved for it. Linda agreed to waive her rights by her testimony supporting the oral agreement. There were no findings of conditions appropriate to reserve the issue.

"Appropriate conditions" include, but are not limited to: (1) lack of *in personam* jurisdiction over the respondent; (2) if a party would be unable to pay court-ordered child support or maintenance; (3) if the court has set aside a fund for child support; or (4) if children do not reside with either parent. (*In re Marriage of Cohn* (1982), 93 Ill. 2d 190, 199.) Other reasons "for bifurcation must be of the same caliber as those enumerated in *Cohn.*" (*In re Marriage of Bogan* (1987), 116 Ill. 2d 72, 80.) Such reservation must be necessary. (*Cohn,* 93 Ill. 2d at 197.) As none of the appropriate conditions apply here, it was neither necessary nor appropriate to reserve the division of pension in the instant case.

■ The Marriage Act is to be strictly construed. (*Nardi v. Segal* (1967), 90 Ill. App. 2d 432, 436-37, citing *Morrow v. Morrow* (1957), 15 Ill. App. 2d 109, 112-13.) Marriage dissolution is statutory. (*In re Marriage of Brown* (1992), 225 Ill. App. 3d 733, 740.) A court must act within the statutory authority granted to it in a dissolution of marriage action; it may not rely upon its general equity powers. (*Brown,* 225 Ill. App. 3d at 737.) " 'In the exercise of special statutory jurisdiction, if the mode of procedure prescribed by statute is not strictly pursued, no jurisdiction is conferred on the circuit court.' " (*Brown,* 225 Ill. App. 3d at 737, quoting *Fredman Brothers Furniture Co. v. Department of Revenue* (1985), 109 Ill. 2d 202, 210.) In the instant case, we strictly construe the Marriage Act. We find that because the trial court did not follow the statutory requirements of section 401(b) of the Marriage Act, it failed to reserve the issue of the Burkharts' pension.

■ This result, however, does not dispose of the case. The law of section 401(b) of the Marriage Act also includes the following: "Such judgment shall not be entered unless, to the extent it has jurisdiction to do so, the court has considered, approved, reserved or made provision for child custody, the support of any child of the marriage entitled to support, the maintenance of either spouse and the disposition of property." Ill. Rev. Stat. 1989, ch. 40, par. 401(b) (now codified, as amended, at 750 ILCS 5/401(b) (West 1992)).

The decision as to the division of marital property and maintenance depends upon the court's decision as to the apportionment of pension benefits. (*Britton,* 141 Ill. App. 3d at 592.) In *Britton,* the pension issue was reserved because the employed spouse had not reached retirement age. Here, Tony was receiving his military

retirement pay at the time the dissolution petition was filed; proportionate division could have been made at that time.

The judgment entered April 16, 1990, was not a final appealable order. "Failure by the trial court to make a ruling on the appropriate distribution of the pension plan would make the trial court's judgment not appealable because it would not be a final judgment disposing of all matters." (*In re Marriage of Blackston* (1994), 258 Ill. App. 3d 401, 407; see also *In re Marriage of Rosenow* (1984), 123 Ill. App. 3d 546; *Britton*, 141 Ill. App. 3d 588.) Tony filed a timely appeal from the final appealable order dividing the pension, which provides this court with jurisdiction to hear his appeal.

■ ■ Courts have used two methods to divide these pension interests: the "reserved jurisdiction" method and the "total offset" method. (*In re Marriage of Benz* (1988), 165 Ill. App. 3d 273, 281; see also *In re Marriage of Mantei* (1991), 222 Ill. App. 3d 933, 937.) The reserved jurisdiction approach is explained in *Robinson v. Robinson* (1986), 146 Ill. App. 3d 474, 476. "Under this method, the court orders the employee spouse to pay an allocated portion of the pension fund to the former spouse, as it is disbursed, while retaining jurisdiction to enforce the decree. [Citation.] *** The method also does not affect the appealability of an order of dissolution which employ[ ]s it." (*Robinson*, 146 Ill. App. 3d at 476-77; see also *Benz*, 165 Ill. App. 3d at 282.) The reserved jurisdiction approach is appropriate when the payment of the pension is uncertain or when there are insufficient assets for an offsetting award. *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 663.

In using the "total offset" method, the court must determine the actual value of the pension, using actuarial evidence and discounting the pension to present value, then determine the marital portion of the resulting amount. *Benz*, 165 Ill. App. 3d at 282.

The method used by the trial court on April 16, 1990, by reservation of the pension issue without a proportionate division, was error. We reverse the judgment of the court as to the disposition of marital property and remand the cause for reconsideration of all property issues.

Reversed and remanded.

WOODWARD and QUETSCH, JJ., concur.