(No. 54978.—

*In re* MARRIAGE OF RUTH M. COHN, Appellee, and STUART A. COHN, Appellant.

*Opinion filed October 22, 1982.*

Stephen H. Katz, Peter F. LoMonaco, Gregg I. Minkow, and Rawles, Katz & McKeown, Ltd., of Wauke-

gan, for appellant.

Gomberg, Schaps & Goldberg, Ltd., of Chicago (Vincent F. Vitullo, of counsel), for appellee.

JUSTICE MORAN delivered the opinion of the court:

The circuit court of Lake County denied a motion by petitioner, Ruth Cohn, to vacate a judgment of dissolution of her marriage to respondent, Stuart Cohn. The appellate court reversed, vacating the judgment and remanding the cause for further proceedings. (94 Ill. App. 3d 732.) We granted respondent's petition for leave to appeal.

The issues raised by respondent on appeal can be condensed to two essential questions: (1) Did the trial court err in this case by entering a dissolution order while reserving property disposition, child custody, and maintenance issues for future consideration? (2) If so, did a legislative amendment, effective August 14, 1981, retroactively validate the trial court's action?

The following is a summary of facts. On May 1, 1979, Ruth Cohn filed a petition to dissolve her marriage to respondent. On May 14, after an uncontested hearing on grounds for dissolution, the trial judge made the following oral pronouncement, as indicated by the report of proceedings:

"The Court will find sufficient evidence to establish the grounds of extreme and repeated mental cruelty without cause or provocation by the Petitioner and enters Judgment of Dissolution instanter.

The Court orders that the transcript be made a part of the file. This matter will be continued for disposition of property and custody to be determined by hearing or agreement to be brought up on notice for the same."

On the same day, the judge signed an order, which appears to be a standard form that included blank spaces for filling in specifics. The order (with the italicized words indicating the written-in portions) stated:

"This cause coming on to be heard in open Court on Petition and Reply heretofore filed herein and the Court having heard evidence and being now fully advised in the premises, finds sufficient evidence to establish *extreme and repeated mental cruelty* without cause or provocation in behalf of the Petitioner.

It is thereupon ordered by the Court that said cause be and the same is hereby continued to *prop. disp. custody & maint. either by hearing or agreement to be brought up on notice for entry of judgment."*

The docket sheet entry for May 14 provides:

"Hearing on Petition and Response—Court finds sufficient evidence to establish extreme and repeated mental cruelty without provocation of Petitioner—Cause continued to property disposition, child custody & support, maintenance etc. upon hearing or agreement to be brought up on notice for entry of Judgment (See Order)."

On December 12, 1979, respondent filed a motion requesting the court "to enter the attached Judgment for Dissolution of Marriage in accordance with the proceedings which were held on May 14, 1979." The proposed judgment included the notation "ENTERED Nunc Pro Tunc May 14, 1979." On the same date, petitioner filed a response to the motion, alleging that following the May 14 hearing she and respondent resumed cohabitation as husband and wife, that as a result she became pregnant, and that she was then six months pregnant. She also alleged that she resumed cohabitation with respondent in reliance upon his representations. She moved the court to vacate, hold for naught, and expunge the proceedings and testimony held on May 14, 1979.

After the hearing on the motion, the trial court entered the following order:

"ON MOTION *** for respondent to enter judgment herein and the Court having considered the transcript of proceedings of May 14, 1979 and having heard the arguments of counsel and being fully advised in the premises,

It is hereby ordered that the Motion to enter the Judgment of Dissolution of Marriage is allowed.

> Petitioner is allowed thirty (30) days from this date to file Petition to Vacate and supporting Memorandum of Law."

The court also signed the judgment of dissolution which had been submitted by respondent which provided "ENTERED NUNC PRO TUNC May 14, 1979."

On January 4, 1980, within the 30-day period, petitioner filed a motion to vacate the judgment, alleging that the court had no authority to enter a judgment of dissolution before the maintenance, child support, and other property rights were determined; that the court had no authority to enter the judgment *nunc pro tunc* May 14, 1979; and that the court erred in not making an express written finding that there was no just reason for delaying enforcement or appeal. A hearing on the motion was held on January 25, and on January 31, 1980, the trial court denied the motion and expressly found there was no just reason for delaying enforcement or appeal.

The appellate court first determined that denial of the motion to vacate the judgment dissolving the marriage, but reserving property disposition, maintenance and child custody issues for future consideration, was appealable under Supreme Court Rule 304(a) (73 Ill. 2d R. 304(a)). It then held that section 401(3) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1977, ch. 40, par. 401(3)) allows reservation of child custody, support, maintenance or property disposition only under "appropriate circumstances." (94 Ill. App. 3d 732, 739.) The court opined that appropriate circumstances included, but were not limited to, where the court does not have *in personam* jurisdiction over the respondent, where a party is unable to pay child support or maintenance if so ordered, where the court has set aside an adequate fund for child support pursuant to section 503(d) of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(d)), or where the children do not reside with either parent. The court concluded that because the circumstances of this case do not provide "appropriate cir-

cumstances" for dissolving the marriage before adjudication of the other issues, the court was without authority to enter the dissolution judgment. The court also stated that the statutory prerequisites set forth in section 401(3) are not jurisdictional in the sense they cannot be waived. Finding that, in this case, petitioner had not waived the mandatory requirements of section 401(3), it granted her motion to vacate the judgment. (94 Ill. App. 3d 732, 740.) Following a legislative amendment to section 401(3), respondent filed a motion to discharge the appeal to this court and return the mandate to the appellate court. The motion was taken with the case.

Respondent argues that the original 1977 act places no "appropriate circumstances" limitation on the circuit court's power to enter bifurcated judgments for dissolution of marriage, a limitation imposed by the appellate court. We disagree. At the time of the proceedings herein, section 401(3) of the Act provided:

"Such judgment [of dissolution] shall not be entered unless, to the extent it has jurisdiction to do so, the court has considered, approved, reserved or made provision for child custody, the support of any child of the marriage entitled to support, the maintenance of either spouse and the disposition of property." (Ill. Rev. Stat. 1977, ch. 40, par. 401(3).)

Section 401(3) is based upon section 302(a)(4) of the Uniform Marriage and Divorce Act (Uniform Act), which provides that a court shall enter a decree of dissolution of marriage if, "to the extent it has jurisdiction to do so, the court has considered, approved, or provided for child custody, the support of any child entitled to support, the maintenance of either spouse, and the disposition of property; or has provided for a separate, later hearing to complete these matters." 9A Unif. Laws Ann. sec. 302(a)(4) (1979).

As pointed out in the historical and practice notes to section 401(3) of the Act, use of the word "reserved" is consistent with the language in the Uniform Act that per-

mits a judgment for dissolution if the court "has provided for a separate, later hearing to complete these matters." (Ill. Ann. Stat., ch. 40, par. 401(3), Historical and Practice Notes, at 105 (Smith-Hurd 1980).) (This language was added to the 1970 draft of the Uniform Act.) In this respect, the intent of the Uniform Act was not to give the trial court unlimited discretion to enter a judgment and hold a later hearing for disposition of the other named factors. The commissioner's comment to section 302(a)(4) of the Uniform Act states:

> "The phrase, 'considered, approved, or provided for,' in subsection (a)(4) is intended to confer upon the court the authority to refuse to make any award, if the evidence justifies an outright denial, as well as the authority to make such allotment as the facts require. To avoid any doubt, the court is authorized expressly to provide for a later hearing to complete action on these matters, *if necessary.*" (Emphasis added.) (9A Unif. Laws Ann. sec. 302(a)(4), Commissioners' Comment, at 123 (1979).)

Thus, the provision providing for a later hearing is inserted to make clear that the court has authority to resolve matters relating to child custody, support, maintenance, and disposition of property, and, *if necessary,* a hearing after a dissolution order may be held to complete action on these matters. The historical and practice notes to section 401(3) of the Illinois act comport with this interpretation of the Uniform Act by providing that the court may reserve determination of these issues "in appropriate circumstances." Ill. Ann. Stat., ch. 40, par. 401(3), Historical and Practice Notes, at 105 (Smith-Hurd 1980).

The historical and practice notes also provide that section 401(3) "encourages the court to decide all matters incident to the dissolution in a single judgment, to the fullest extent of its authority, in order to achieve finality, promote judicial economy, and avoid multiple litigations and complications which can result from the entry of partial judgments, particularly judgments which dissolve the marriage

but 'reserve' remaining issues for later determination." (Ill. Ann. Stat., ch. 40, par. 401(3), Historical and Practice Notes, at 105 (Smith-Hurd 1980).) Respondent recognizes that the purpose of section 401(3) is, in part, to promote judicial economy. He argues, however, that judicial economy can best be served by an "interim order" that grounds for divorce exist. He asserts that, where grounds will not be contested, such an order would save an enormous amount of costly preparation and would permit both parties to concentrate on the remaining issues. Where grounds do exist, respondent asserts that the ability to bifurcate permits the court to terminate automatic spousal inheritance or pension claims which might conflict with a subsequent property division.

In response to these contentions, we believe that where grounds will not be contested, the parties will be equally able to concentrate on the remaining issues of custody, support and property division whether the grounds are disposed of in an interim proceeding followed by a "judgment" of dissolution or are disposed of in the first stage of a trial followed immediately by the orderly disposition of the other issues at the second stage. Nor does section 403(e) of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 403(e)) encourage, expressly or by implication, the entry of a judgment of dissolution of marriage that reserves the remaining issues for later trial. (See Ill. Ann. Stat., ch. 40, par. 403(e), Historical and Practice Notes, at 254-55 (Smith-Hurd 1980).) Although the section provides for a finding that grounds exist, it does not provide for multiple judgments.

Further, irrespective of whether the grounds are contested, entry of a bifurcated judgment of dissolution presents many potential complications. For example, as discussed by the historical and practice notes, where adjudication of property rights under section 503 of the Act has been reserved following a dissolution of marriage judg-

ment, the court could likely be required to adjudicate marital-property rights that have become entangled with the supervening rights of third parties, including subsequent spouses. Additionally, entering a judgment of dissolution prior to property disposition would complicate, rather than simplify, matters with respect to the rights of a surviving spouse in the event of an intervening death. Other complications that can ensue if a judgment of dissolution is not deferred until disposition of the other matters include the loss of ability to file joint income tax returns, the loss of medical insurance coverage, and the loss of marital-property treatment for property accumulated during the intervening period between the entry of the judgment of dissolution and the final disposition of property rights. See Ill. Ann. Stat., ch. 40, par. 401(3), Historical and Practice Notes, at 105-06 (Smith-Hurd 1980). See generally *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 572-73.

We therefore believe that sound policy reasons militate against an interpretation of section 401(3) that gives a trial judge unfettered discretion to bifurcate a judgment of dissolution. We do, however, recognize that certain circumstances will justify bifurcating a judgment. We conclude, as did the appellate court based upon the historical and practice notes, that appropriate circumstances for entering a judgment of dissolution, while reserving questions of child custody, support, maintenance or property disposition, include, but are not limited to, the following: Where the court does not have *in personam* jurisdiction over the respondent; where a party is unable to pay child support or maintenance if so ordered; where the court has set aside an adequate fund for child support pursuant to section 503(d) of the Act; or where the parties'·child or children do not reside with either parent. We do not attempt to envision all the possible appropriate circumstances. In this case, however, the record fails to disclose any justification at all for entering a judgment of dissolution and continuing

the matter for disposition of issues of property disposition, custody and maintenance. There is nothing in the record to reveal that the trial court gave any consideration to the question of whether there was a need to reserve disposition of these matters.

We note parenthetically that *Bremer v. Bremer* (1954), 4 Ill. 2d 190, cited by respondent, involved the issue of whether a circuit court had jurisdiction to enter a supplemental decree fixing attorney fees following a divorce decree. This court held only that entering a divorce decree under the former Divorce Act did not divest the circuit court of jurisdiction to dispose of attorney fees, alimony, and property matters. (4 Ill. 2d 190, 192.) The issue of "appropriate circumstances" was not before the court. In addition, as noted by the historical and practice notes to section 401(3), this subsection has no counterpart in the repealed Divorce Act.

Based upon the Uniform Marriage and Divorce Act, the historical and practice notes to the Illinois act, and sound policy considerations, we believe the appellate court properly construed section 401(3) as originally contemplating that appropriate circumstances should exist before a trial judge enters a judgment of dissolution and reserves questions of child custody, support, maintenance, or property disposition. Inasmuch as the record is completely devoid of any appropriate circumstances when the trial judge reserved these questions, the trial court's entry of judgment of dissolution was improper under the 1977 statute.

Respondent next argues that an amendment to section 401(3), Public Act 82—197, effective August 14, 1981 (passed June 12, 1981), retroactively validates the trial court's action. That amendment added the following provisions to section 401(3):

"The court may bifurcate the judgment for dissolution and reserve questions of child custody, the support of any child of the marriage entitled to support, the maintenance of either spouse and the disposition of property re-

gardless of whether i) the court has *in personam* jurisdiction over the respondent, or ii) one of the parties would be unable to pay child support or maintenance if so ordered, or iii) the court has set aside an adequate fund for child support pursuant to subsection (d) of Section 503, or iv) the child or children of the parties do not reside with either parent.

All judgments for dissolution of marriage reserving any such questions entered prior to the effective date of this amendatory Act of 1981 are declared to be valid as of the date of entry.

If any provision of this Section or application thereof shall be adjudged unconstitutional or invalid for any reason by any court of competent jurisdiction, such judgment shall not impair, affect or invalidate any other provision or application of this Section, which shall remain in full force and effect." (Ill. Rev. Stat. 1981, ch. 40, par. 401(3).)

The amendment also changed the first sentence in subparagraph (3), which had read "[s]uch judgment *shall* not be entered unless ***," to "[s]uch judgment *may* not be entered unless ***." (Emphasis added.)

The language in the amendment gives the trial court discretion to enter a judgment of dissolution while reserving the remaining issues irrespective of the appropriate circumstances specifically delineated in the appellate court's decision in the instant case. (94 Ill. App. 3d 732, 739.) In addition, the amendment purports to validate any judgment for dissolution that reserved the remaining issues which was entered prior to the effective date of the amendment. It is evident that the amendment was enacted in order to reverse the result reached by the appellate court in this and other like cases. Any possible doubt is dispelled by the readings of the bill in both the Senate and House. On second reading of Senate Bill 377, Senator Marovitz stated:

"Amendment No. 1 deals with a situation that came up in committee. This is regarding the Cohn Case where a lot of bifurcated divorces were ruled invalid. This puts back

a paragraph which says that all judgments for dissolution prior to the determination handed down in the Cohn Case are valid." (Senate Debates, April 30, 1981, at 32.)

On third reading, Senator Marovitz stated:

> "Senate Bill 377 is in response to a . . . a recent court decision in the Cohn Case, which caused a tremendous amount of consternation, regarding . . . bifurcated divorces. This bill clarifies the . . . validity of bifurcated divorces so that . . . a judge . . . could validly . . . dissolve a marriage, issue a judgment for divorce, and reserve the question of child custody and maintenance, child support, disposition of property." (Senate Debates, May 20, 1981, at 189.)

Similarly, Representative Greiman stated on third reading in the House of Representatives:

> "There was a provision [in the Marriage and Dissolution of Marriage Act] for a bifurcation of the issues of property and the issues of grounds. And the question happened, 'What happens if they do not have the appropriate bifurcation?' There was apparently a case . . . that indicated that the divorce might well be in question. And so this Bill provides that judgments for dissolution, where they reserve the questions and enter the decree, are valid as of the date of the entry of that decree. *** That's the significant part of this Bill." House Debates, June 12, 1981, at 60-61.

The narrow question presented, then, is whether the amendment can be retroactively applied to validate judgments of dissolution that would be invalid, if not waived, under the appellate court decision in the case at bar. This court has held that an amendment may be applied retroactively if its purpose is to clarify an existing law that is ambiguous, rather than to change the law. (*Commonwealth Edison Co. v. Department of Local Government Affairs* (1981), 85 Ill. 2d 495. See *O'Connor v. A & P Enterprises* (1980), 81 Ill. 2d 260.) This court has also observed that a material change in a statute made by an amendatory act is presumed to change the original statute. (*O'Connor v. A &*

*P Enterprises* (1980), 81 Ill. 2d 260, 271; *Hoover v. May Department Stores Co.* (1979), 77 Ill. 2d 93, 107. See 1A A. Sutherland, Statutory Construction sec. 22.30, at 178-79 (4th ed. 1972).) Although the legislature may change the law as interpreted by the courts prospectively, it cannot retroactively alter a statute to overrule a decision of a reviewing court. *Roth v. Yackley* (1979), 77 Ill. 2d 423, 428-29; see *Commonwealth Edison Co. v. Department of Local Government Affairs* (1981), 85 Ill. 2d 495, 505.

In the instant case, it is clear that the amendment (Pub. Act 82—197) was an attempt to change the law as interpreted by the appellate court. This is clear from the specific factors delineated in the amendment, identical to those appropriate circumstances set forth by the appellate court, as well as from the debates in both the Senate and House of Representatives alluded to above.

We believe the legislature's attempt to retroactively alter a reviewing court's interpretation of the statute (section 401(3)) is similar to the situation presented in *Roth v. Yackley* (1979), 77 Ill. 2d 423. In *Roth*, the legislature deleted language in the original statute that a court was to place "reasonable terms and conditions" on probation and replaced it with language cataloging certain conditions, including the imposition of fines and costs—two conditions which this court found, in *People v. DuMontelle* (1978), 71 Ill. 2d 157, not to be reasonable. The amendatory act also attempted to apply the amendments to events that occurred before its effective date. In holding that the amendments violated the separation of powers principle embodied in article II, section 1, of the Illinois Constitution, this court stated:

> "This court's explication of the statute had become, in effect, a part of the statute until the General Assembly changed it. *City of Decatur v. Curry* (1976), 65 Ill. 2d 350, 359; *Mitchell v. Mahin* (1972), 51 Ill. 2d 452, 456.
>     * * *
> The General Assembly's declaration that the amenda-

tory act applies to events which occurred before the effective date of the amendatory statute represents a legislative attempt to retroactively apply new statutory language and to thereby annul a prior decision of this court. This is an assumption by the General Assembly of the role of a court of last resort in contravention of the principle of separation of powers embodied in article II, section 1, of the Illinois Constitution of 1970, which provides: 'The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another.' (See *Federal Express Corp. v. Skelton* (1979), 265 Ark. 187, 199, 578 S.W.2d 1, 7-8; *Johnson v. Morris* (1976), 87 Wash. 2d 922, 926, 557 P.2d 1299, 1303; 1A Sutherland, Statutes and Statutory Construction sec. 27.04 (4th ed. 1972).) While the General Assembly has the power to draft legislation and to amend statutes prospectively if it believes that a judicial interpretation was at odds with its intent (see *Bruni v. Department of Registration and Education* (1974), 59 Ill. 2d 6, 12; *Mitchell v. Mahin* (1972), 51 Ill. 2d 452, 456), it is the function of the judiciary to determine what the law is and to apply statutes to cases. (See *People v. Nicholls* (1978), 71 Ill. 2d 166, 179; *Belfield v. Coop* (1956), 8 Ill. 2d 293, 307.) The cases cited by the State do not recognize that the General Assembly may retroactively overrule a decision of a reviewing court. Instead they recognize only the power of the legislature to establish laws prospectively and to alter for future cases interpretations of statutes by reviewing courts. See *Modern Dairy Co. v. Department of Revenue* (1952), 413 Ill. 55, 66; *State v. Bowman* (1962), 116 Ohio App. 285, 286-87, 187 N.E.2d 627, 629; *cf. People ex rel. Spitzer v. County of La Salle* (1960), 20 Ill. 2d 18, 28." 77 Ill. 2d 423, 428-29.

In this case, as in *Roth*, the legislature invaded the province of the judiciary by retroactively overruling a decision of a reviewing court. This constitutes a violation of article II, section 1, of the Illinois Constitution, which embodies the principle of separation of powers.

Respondent argues that this case should be compared to *Schlenz v. Castle* (1981), 84 Ill. 2d 196, rather than to

*Roth v. Yackley.* In *Schlenz,* this court rejected a separation of powers challenge to section 318.1 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 799.1), which validated property assessments published after the existing statutory time limits had expired. Prior to the amendment, this court, in *Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 23-24, held that publication dates in section 103 of the Revenue Act were mandatory and that failure of timely publication is not an "informality or clerical error." Contrary to respondent's argument, however, the basis of this court's decision in upholding section 318.1 in *Schlenz* reveals that the instant case is far more similar to *Roth* than to *Schlenz.* After the court in *Schlenz* pointed out that section 318.1 was enacted before the circuit court judgments in the case, the court stated:

> "The statute *** in *Roth* is clearly distinguishable from that here involved. The General Assembly did not amend section 103 of the Revenue Act, and section 318.1 does not attempt to attribute to section 103, at the time of our opinion in *Andrews,* a meaning different from that declared in that opinion." (84 Ill. 2d 196, 206-07.)

In *Schlenz,* then, the legislature did not attempt to retroactively interpret the statute. In the instant case, like *Roth* and unlike *Schlenz,* the legislature by amendment attempted to attribute to the original statute, at the time of the reviewing court's opinion, a meaning different than that declared in the opinion.

Petitioner also cites *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, for the proposition that the legislature may enact legislation for prospective application in pending cases so long as it does not attempt to tell a court how to apply the new law to the facts of a particular case. Although this proposition is correct, the amendment in the instant case, unlike the legislation in *Kujawinski,* does attempt to specify a particular result to this court, not only in this case, but in any case where a judgment of dissolution was entered while reserving disposition of property,

custody, support, and maintenance. In contrast, the statute in *Kujawinski* provided that the Act "applies to all pending actions and proceedings commenced prior to its effective date with respect to issues on which a judgment has not been entered." (Ill. Rev. Stat. 1977, ch. 40, par. 801(b).) This court, in rejecting a separation of powers challenge, properly found that this section "does not dictate the resolution of facts in pending actions; it merely mandates which law the court is to apply to the facts in pending cases." (71 Ill. 2d 563, 570.) As stated above, the amendment here, like the amendment in *Roth*, but unlike the above statute in *Kujawinski*, attempts to attribute to a statute, at the time of the reviewing court's opinion, a meaning different than that declared in the opinion and attempts to validate all judgments reserving such questions that were entered prior to the effective date of the amendment.

We also note that dissolution of marriage is entirely statutory in origin and nature, and that the court's authority is limited thereby. (*Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 60.) However, we are not ruling on the legislature's authority to pass legislation relating to the Illinois Marriage and Dissolution of Marriage Act. Rather, we hold only that portion of the amendment that purports to retroactively validate all judgments of dissolution reserving questions of custody, support, maintenance, and property disposition entered prior to the effective date of the amendment unconstitutional.

Due to our disposition of the issues concerning the requirements of the original statute and the effect of the amendment, it is unnecessary to address the questions raised by petitioner.

We are cognizant of the potential complications that could arise as a result of this opinion. The appellate court held that the provisions of section 401(3) requiring appropriate circumstances are mandatory, yet they do not

present a jurisdictional requirement in the sense that they cannot be waived. Here, petitioner did not waive the mandatory requirements because she made timely objections at the trial court level. Today's decision, however, does not affect the validity of bifurcated judgments that were entered under the statute prior to its amendment by Public Act 82—197, where no objection on this basis was made and where no appeal was taken. In such cases, the mandatory provisions of section 401(3) (Ill. Rev. Stat. 1977, ch. 40, par. 401(3)) are deemed to have been waived. See *Little v. Little* (1981), 96 Wash. 2d 183, 197-98, 634 P.2d 498, 506.

To summarize, we hold that under the circumstances of this case, the trial court could not, under section 401(3) of the Act, as originally enacted, enter a judgment of dissolution while reserving questions involving property distribution, maintenance, and custody. In addition, the portion of Public Act 82—197 attempting to validate prior judgments of dissolution was an unconstitutional attempt to retroactively invalidate the action of a reviewing court. Finally, the trial court's error in entering judgment was not waived inasmuch as petitioner timely objected and appealed.

For the above-stated reasons, petitioner's motion to vacate the judgment of dissolution should have been granted. Respondent's motion to discharge the appeal and return the mandate to the appellate court is denied. The judgment of the appellate court is affirmed and the cause is remanded to the circuit court of Lake County for proceedings consistent with this opinion.

*Motion denied; judgment affirmed; cause remanded.*